UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>        v.                                      )<br>ALPHONSO D'ANTIGNAC,           )<br>                                                )<br>        Defendant.                     )<br>_____) | CR. No. 05-PT-332 (TFH/AK) |

REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge by the Honorable Thomas F. Hogan for a Hearing on Violation of Supervised Release and a Report and Recommendation.

Background

The Defendant, Alphonso D'Antignac, appeared before the Honorable Dudley H. Bowen, Jr., Chief United States District Judge for the Southern District of Georgia on September 3, 2003, after his plea of guilty to Conspiracy to make False Statements in the Acquisition of Firearms, in violation of 18 U.S.C. §371, and Making False Statements in the Acquisition of Firearms, in violation of 18 U.S.C. §924(a)(1)(A).  He was sentenced to twenty-seven months imprisonment as to each count, to be served concurrently, followed by three years supervised release as to each count.  In addition to the standard conditions, the Defendant was required to: pay a $200 special assessment; pay $453 restitution; participate in a program of testing for drug and alcohol abuse as deemed necessary by the probation officer until such time as Defendant's release from the program by the Court; and perform 200 hours of community service within the first twelve

months of his supervised release, as directed by the probation officer.  Supervision began on June 17, 2005, and is scheduled to expire on June 16, 2008.

On September 13, 2005, jurisdiction of the Defendant's supervision was transferred to this Court.  By Memorandum dated October 24, 2007, the supervising probation officer notified the Honorable Thomas F. Hogan that the Defendant had engaged in new criminal conduct, specifically that, on September 22, 2007, the Defendant was arrested by Virginia State Police and charged with Driving While Intoxicated; Refusal to Permit Breathalyzer or Blood Sample Collection;  Reckless Driving; and Speeding in Excess of 80 mph.  According to court records of the General District Court in Emporia, Virginia, Mr. D'Antignac was released on bond on September 24, 2007, and was scheduled to appear for trial on December 10, 2007.

On October 3, 2007, Mr. D'Antignac reported to his probation officer, as instructed, and admitted to drinking while entertaining at a night club in Fairfax, Virginia, the night of his arrest.  However, Mr. D'Antignac failed to report his September 22, 2007 arrest, within 72 hours and he left the metropolitan Washington area; i.e., a fifty mile radius from the District of Columbia, without permission of his probation officer.

Prior to a Hearing on Violation being held on the new criminal conduct, which is set forth in the October 24, 2007 Memorandum to the Court, Mr. D'Antignac engaged in further new criminal conduct.  In a November 6, 2007 Memorandum  to the Court, the supervising probation officer added two additional violations of supervised release to the Request for Course of Action then presently pending before the trial court.

The new criminal conduct alleged by the Probation Officer was that, on November 2, 2007, a warrant was issued for Mr. D'Antignac's arrest, charging him with First and Second

Degree Assault; Kidnapping; Handgun in a Vehicle; Handgun on Person; Handgun in Use of a Felonious-Violent Crime; and False Imprisonment. According to the probation officer, a Baltimore City Police Department detective contacted the probation office on November 2, 2007, advising of the aforementioned charges and asked the probation office if they could help the Baltimore Police in locating Mr. D'Antignac to serve the outstanding warrant. The Defendant was apprehended on November 4, 2007, and was taken to Baltimore City, Maryland and held without bond.

The police report reflects that, on November 1, 2007, Baltimore police officers investigated a sex offense against a victim, Ms. Robertson, who was at the time 18 years of age. During the interview conducted by a detective, the victim, Ms. Robertson, told them that, on October 30, 2007, she was abducted from the corner of an intersection in Baltimore, Maryland, where she was standing with a friend who was 17 years old. She reported that they were approached by an old model Cadillac with Washington D.C. tags, which was driven by an unknown male. An unknown female exited the vehicle and grabbed Ms. Robertson by the arm, telling her to get in the car. A struggle ensued at which time the unknown female sprayed mace in Ms. Robertson's friend's face while she was attempting to help free Ms. Robertson. At that time, the driver, who later identified himself to the victim as "Playboy," exited the vehicle with another unidentified male, pushed the victim into the car and locked the door behind her.

The Defendant got into the driver seat and pulled a silver revolver type handgun from under the driver seat, pointed it at the victim and threatened to kill her. He then grabbed her by her hair, pulling several braids out of her scalp and instructed her to come with him or he would kill her. He put the gun into his waistband and proceeded driving to a Red Roof Inn in Laurel,

Maryland. The victim said there were three other passengers in the vehicle. Upon arriving at the motel, the victim stated that there was a pit bull dog in the room and that Mr. D'Antignac kept inciting the dog to attack her but she was not bitten. Shortly thereafter, he grabbed her by the throat, pulling more hair from her head, produced a box cutter and threatened to cut her. He did in fact cut her right arm and left thigh through her clothing with the box cutter. He then tied her with a dog rope and a cloth belt by the arms to the bed and proceeded to sodomize her.

Mr. D'Antignac told the victim she was going to work for him, referring to prostitution, or he would kill her. He then drove her to an area in Jessup, Maryland and told her that she had to work the street, picking up truck drivers and giving him the money. The victim was escorted by a female who stayed with her to make sure she did not escape. Ms. Robertson approached an unknown truck driver and pleaded with him to take her to her house in Baltimore, which he did, and she immediately called the police.

The Baltimore City Police Department contacted the Howard County Police Department and advised them of the investigation and the suspect's description and the Baltimore detective was informed by the Howard County Police that the Defendant was already under investigation by their agency.

After her release from the hospital, Ms. Robertson pointed out the location of the assault at the Red Roof inn and positively identified Mr. D'Antignac as the assailant from a photo array provided by the Howard County Police Department.

The probation officer was thereafter contacted by the F.B.I., who said the United States Attorney's office in Baltimore, Maryland was looking to charge Defendant with federal charges of Human Trafficking, which carries a sentence of up to life imprisonment.

Defendant's second alleged violation of supervised release occurred on October 30, 2007, when Mr. D'Antignac traveled, without authorization from his probation officer, to an area in Baltimore, Maryland, which exceeded the fifty mile limit for travel.

### Hearing on Violation

A hearing on the alleged violations of the conditions of Defendant's supervised release was held before the undersigned on May 8, 2008. At that hearing, the Defendant was represented by counsel. The Probation Officer advised the Court that the new criminal conduct leading up to the arrest by the Baltimore police of the Defendant on November 4, 2007, for First and Second Degree Assault, Kidnapping and gun charges in Baltimore involving the victim, Ms. Robertson, and the allegation that Mr. D'Antignac had left the jurisdiction without permission of the probation officer were being withdrawn because the state charges had been dismissed. The probation officer noted however that there is an ongoing investigation in Baltimore by the United States Attorney's Office. The probation officer also noted, in her Memorandum to the Court dated November 6, 2007, that on October 19, 2006, the Defendant was arrested and charged with 15 counts including First and Second Degree Assault; Forcibly/ Fraudulently Carrying and Concealing a Person Within the States; First, Second, Third and Fourth Degree Sex Offenses; Knowingly Transporting a Handgun in a Vehicle; Carrying a Handgun on his Person; Use of a Handgun in the Commission of a Felony and/or Crime of Violence; Detaining a Person Unlawfully and Feloniously; Robbery with a Dangerous Weapon; and Recklessly Engaging in Conduct (pointing a handgun.) These charges were filed in Howard County, Maryland. The charges for these offenses were subsequently dropped because the victim could not be located to testify, resulting in the Probation Officer withdrawing the violation notice against the Defendant

for the October 19, 2006 charges.  The probation officer pointed out to the Court the similarity of the earlier offenses to the more recent charges brought against the Defendant, which involved Ms. Robertson as the victim of the alleged criminal acts.

The probation officer further noted that the Defendant has been arrested on three charges within a period of 12 months; that the Defendant remains unemployed; that he had worked as a laborer in 2006 and later obtained employment with the Pepsi Cola Company and was terminated. According to the probation officer, the Defendant worked for his father but in February 2007, he broke his arm and was unable to continue working.

The Defendant, through counsel, admitted to leaving the D.C. metropolitan area without permission of his probation officer, and admitted that he failed to notify the Probation Officer within 72 hours of his arrest on September 22, 2007, and that Mr. D'Antignac failed to submit a truthful and complete written report within the first five days of the month in his September 2007 monthly supervision report.

Recommendation

In view of the Defendant's admission that he has failed to comply with the terms and conditions of his supervised release, the undersigned finds by a preponderance of the evidence that Mr. D'Antignac is in violation of the terms and conditions of his supervision.  The Defendant, through counsel, argued that the admitted violations were minor technical violations and that he should not be revoked and sentenced to any period of imprisonment.  The Defendant advises the Court that he had been incarcerated since November 7, 2007, on the Baltimore charges. He urges the trial court to consider that he has been held since April 25, 2008, as a result of a detainer having been lodged with the Baltimore Authorities as a result of the warrant issued

by this Court for the alleged violations of his supervision. The probation officer recommends that Defendant's supervision be revoked and that he be sentenced to a period of nine months incarceration. The Government concurs with the probation officer, noting that the Defendant has not been truthful, that he had falsified his monthly report, that he has no income and yet he drives a Hummer, and that his supervision should be revoked and he should be sentenced at the high end of the Guideline range. The Government also notes that there is a federal investigation underway in Baltimore of Mr. D'Artignac for kidnapping and a rape in Prince George's County.

At the conclusion of the hearing, without objection, the Court released the Defendant to his supervised release status with electronic monitoring.

## Options Available to the Court

The probation office advises that Mr. D'Antignac's adjustment to supervision has been unsatisfactory in that he has incurred three new arrests during his supervision period. The charges against him that arose out of his arrest on October 19, 2006 and November 4, 2007, were dismissed because the police could not locate the victim of the alleged criminal acts to testify. Defendant was arrested for Driving Under the Influence and Speeding in Emporia, Virginia. The Defendant remains unemployed and continues to reside with his mother in Washington, D.C. The Probation Officer also notes that urinalysis tests have been negative for illegal drug use.

According to the statutory Guidelines, the violations constitute Grade C violations. U.S.S.G. §7B1.3(a)(2) . Upon a finding of a Grade C violation, the Court may revoke conditions

of supervision and for a Criminal History Category of I and a grade C violation, the revocation Guidelines are 3 to 9 months.


**DATED: June 9, 2008**             _____/s/_____
                                    **ALAN KAY**
                                    **UNITED STATES MAGISTRATE JUDGE**